UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| GRE PROPERTY INVESTMENTS, LLC,<br>    Plaintiff,<br><br>v.<br><br>ISANTHES, LLC,<br>    Defendant. | C.A. No. 20-054-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

This action arises from a business deal in which Isanthes, LLC ("Isanthes") agreed to sell to GRE Property Investments, LLC ("GRE") a mortgage loan encumbering a property in Providence, Rhode Island. GRE sues Isanthes for breach of contract and breach of the covenant of good faith and fair dealing, alleging Isanthes breached a warranty in their agreement. ECF No. 1. Isanthes now moves to dismiss the matter under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). ECF No. 9. For the reasons discussed below, the Court DENIES Isanthes' motion.

I.    BACKGROUND

These facts are from GRE's Complaint. ECF No. 1.

In May 2019, GRE and Isanthes entered into a Mortgage Loan Sale Agreement (the "Agreement"). ECF No. 1 at ¶ 6. Under the Agreement, Isanthes agreed to sell, and GRE agreed to buy, a mortgage loan (the "Mortgage Loan") encumbering the real

property at 12 Florence Street, Providence, Rhode Island. *Id.* The purchase price for the Mortgage Loan was $107,000. *Id.* at ¶ 7.

Under the Agreement, Isanthes, as the seller, needed to make certain representations and warranties, including that it had "full power and authority to hold [the] Mortgage Loan, to sell [the] Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by [the] Agreement." *Id.* at ¶ 9. Isanthes also represented that it had "good title to and [was] the sole owner and holder" of the Mortgage Loan and that the transfer of the Mortgage Loan would "vest in GRE all rights as owner of [the] Mortgage Loan[] free and clear of any and all claims, charges, defenses, offsets and encumbrances of any kind or nature whatsoever." *Id.* at ¶ 10.

The conveyance date of the Agreement was May 29, 2019 (the "Conveyance Date"). *Id.* at ¶ 12. After the Conveyance Date, GRE discovered that, before Isanthes was assigned the Mortgage Loan, an Assignment of Mortgage (the "Prior AOM") had been recorded that transferred the Mortgage Loan to an entity other than Isanthes. *Id.* at ¶ 17. This, according to GRE, creates a potentially superseding chain of title, rendering Isanthes' chain of title void under Rhode Island law. *Id.* at ¶¶ 17-19 (citing *Note Capital Grp., v. Perretta*, 207 A.3d 998 (R.I. 2019); *Clark v. Mortg. Elec. Registration Sys.*, 7 F. Supp. 3d 169, 176 (D. R.I. 2014); *Mruk v. Mortgage Elec. Registration Sys.*, 82 A.3d 527, 536 (R.I. 2013)). With this newly acquired information, GRE notified Isanthes of its concern regarding its chain of title. *Id.* at ¶ 21. Isanthes indicated that to remedy the situation it would record a "Rescission of

Erroneous Assignment of Mortgage" (the "Rescission"). *Id.* at ¶ 22. After reviewing the Rescission, GRE informed Isanthes that it did not believe it was legally enforceable and thus would not alleviate its title concerns. *Id.* at ¶ 23. On September 11, 2019, GRE again sent notice to Isanthes of its concern about the Prior AOM and chain of title and cited the warranties in the Agreement it claims Isanthes had breached. *Id.* at ¶ 24.

Two days later, Isanthes unilaterally filed the Rescission with the City of Providence Land Records. *Id.* at ¶25. Concluding that the Rescission was ineffective, GRE notified Isanthes that the title issues precluded it from servicing the loan and thus requested Isanthes repurchase the loan in accordance with Section 6.2 of the Agreement. *Id.* at ¶ 27. Section 6.2 provides the cure period and repurchase rights for breaches of Isanthes' representations and warranties, and states that notice of "a breach of warranty which materially and adversely affects the value of [the Mortgage Loan] would trigger a sixty-day period in which [Isanthes] shall use commercially reasonable efforts to cure such breach in all material respects." ECF No. 11 at 7, §6.2. But if the breach could not be cured, at GRE's option, Isanthes must repurchase the Mortgage Loan within forty-five business days' following the expiration of the sixty-day cure period. *Id.*

On October 31, 2019, sixty days after it claims it first provided notice of the breach, GRE demanded that Isanthes repurchase the Mortgage Loan. ECF No. 1 at ¶¶ 29, 31. Isanthes refused and instead sent a series of unrecorded assignments of mortgages purportedly to cure the breach. *Id.* at ¶ 30. GRE again demanded Isanthes

3

to repurchase the Mortgage Loan but Isanthes refused. *Id.* at ¶ 33. To date, Isanthes has not repurchased the Mortgage Loan. *Id.* at ¶ 34. GRE filed its Complaint on February 4, 2020. ECF No. 1.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) tests the Court's authority to exercise power over those subject to suit. "The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." *Baskin-Robbins Franchising v. Alpenrose Dairy,* 825 F.3d 28, 34 (1st Cir. 2016). "Faced with a motion to dismiss for lack of personal jurisdiction, a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'" *Id.* (citing *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)). One method is an adjudication of the jurisdictional facts through an evidentiary hearing. *Adelson,* 510 F.3d at 48. The most common method, however, is the "prima facie method" or the "prima facie evidentiary standard," which requires no differential factfinding. *Id.* This method only requires the plaintiff proffer evidence which, "taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins,* 825 F.3d at 34. To examine the merits of such a jurisdictional proffer, the Court takes "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." *Id.*

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

4

*García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

III. DISCUSSION

   A. Personal Jurisdiction

Neither party requested an evidentiary hearing, so the Court will use "the prima facie standard" to assess whether GRE met its burden to justify the exercise of

5

personal jurisdiction over Isanthes in Rhode Island. *See PREP Tours v. Am. Youth Soccer Org.*, 913 F.3d 11, 16 (1st Cir. 2019).

Jurisdiction is established when the defendant has "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two forms of personal jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The first form is general jurisdiction, established by "continuous and systematic" contacts with the forum state. *Id.* The second form is specific jurisdiction, based on "specific or case-linked" contacts. *Id.* Both parties agree that general jurisdiction over Isanthes is lacking. ECF No. 12 at 5; ECF No. 15 at 2. GRE, however, contends that specific jurisdiction exists. ECF No. 12 at 5-6.

In its analysis of specific jurisdiction, the Court is guided by two rules. First, the forum in which the Court sits must have a long-arm statute that grants jurisdiction over the defendant. *See Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). Second, "the plaintiff must also show sufficient minimum contacts such that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" *LaVallee v. Parrot-Ice Drink Prod. of Am.*, 193 F. Supp. 2d 296, 302 (D. Mass. 2002) (quoting *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994)). Rhode Island has a long-arm statute, R.I. Gen. Laws § 9-5-33, which authorizes a court to exercise jurisdiction over a non-resident defendant to the fullest extent permitted by the United States Constitution. *See Donatelli v. Nat'l Hockey League*, 893 F.2d 459,

6

461 (1st Cir. 1990); *see also Hilb Grp. v. Rabinowitz*, No. CV 18-00555-WES, 2019 WL 3778738, at *3–4 (D.R.I. June 13, 2019), *report and recommendation adopted as modified*, No. CV 18-00555 WES, 2019 WL 3543690 (D.R.I. Aug. 2, 2019). The Court therefore needs to decide only whether the assertion of personal jurisdiction over Isanthes follows due process principles.

1. Due Process Considerations

The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits a court to exercise jurisdiction over an out-of-forum defendant only if the defendant has "certain minimum contacts with the forum state" related to the claims at issue "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *PREP Tours*, 913 F.3d at 17 (citing *Int'l Shoe*, 326 U.S. at 316).

When specific jurisdiction is asserted, the First Circuit uses three-prongs, testing relatedness, purposefulness, and reasonableness, to analyze due process considerations. *Id.* (citing *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)). Specific jurisdiction may be exercised only if the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities. *Id.* Additionally, the defendant's in-state contacts must represent a "purposeful availment" of the privilege of conducting activities in the forum state that invoked the benefits and protections of that state's laws and made the defendant's involuntary presence before that state's courts foreseeable. *Id.* And finally, the exercise of jurisdiction must be reasonable. *Id.*

Reasonableness is analyzed by considering five factors, known as the "gestalt factors." *Pritzker*, 42 F.3d at 63.

This test of due process is highly "fact-specific" and "few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *PREP Tours*, 913 F.3d at 17 (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978)).

### a. Relatedness

To satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *United Elec.*, 960 F.2d at 1089. "This 'flexible, relaxed standard' for assessing relatedness requires that there be only a 'demonstrable nexus' between the complaint's claims and the activities in the forum that properly may be attributed to the defendant[], such that 'the litigation itself is founded directly on those activities.'" *PREP Tours*, 913 F.3d at 18 (citing *Adelson*, 652 F.3d at 81). In a breach of contract case, such as this, relatedness is established if the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999).

Isanthes contends that relatedness cannot be established because it "has no contacts in Rhode Island." ECF No. 15 at 2. It bases this argument on its contention that it does not do business in Rhode Island and thus need not register in Rhode Island as a foreign corporation. *Id.* (citing R.I.G.L. § 7-1.2-1401). Isanthes also notes that neither it nor GRE is a resident of Rhode Island and that the contract was not

8

negotiated or executed in Rhode Island. ECF No. 9-1 at 6. GRE challenges Isanthes' assertions by noting that Isanthes purportedly serviced and collected mortgage payments from the borrower in Rhode Island before selling the Mortgage Loan. ECF No. 12-1 at 6. Although that activity may not have required Isanthes to register in Rhode Island as a foreign corporation, the analysis for relatedness does not end there. And the fact the Agreement was not negotiated or executed in Rhode Island is not dispositive for a finding of no relatedness. Because, as noted, relatedness can be established if the defendant's contacts with the forum "were instrumental either in the formation of the contract *or in its breach.*" *Phillips Exeter Acad.*, 196 F.3d at 289 (emphasis added). Isanthes contacts with Rhode Island were instrumental in its alleged breach. According to GRE, Isanthes breached the Agreement by warranting that it had "full power and authority to hold [the] Mortgage Loan, [and] to sell [the] Mortgage Loan" and had "good title to and [was] the sole owner and holder" of the Mortgage Loan. ECF No. 1 at ¶¶ 9-10. Isanthes could not accurately make those warranties, according to GRE's theory of the case, because of the Prior AOM and its effect on the title of the Mortgage Loan under Rhode Island law. *Id.* at ¶¶ 18-20. GRE alleges that Isanthes further breached the Agreement when it failed to adequately cure the breach of warranties by filing the Rescission with the City of Providence Land Records. *Id.* at ¶¶ 25-26. GRE's allegations of breach thus arise from and relate directly to Isanthes contacts with Rhode Island and relatedness is established.

9

### b. Purposeful Availment

To satisfy the purposeful availment requirement of specific jurisdiction, the defendant must have "'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)). "[T]he two cornerstones of purposeful availment are 'voluntariness' and 'foreseeability.'" *PREP Tours*, 913 F.3d at 19–20 (citing *Ticketmaster-N.Y. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994)). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant himself.'" *PREP Tours*, 913 F.3d at 20 (citing *Phillips Exeter Acad.*, 530 F.3d at 28). Foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted).

Isanthes argues that, purposeful availment is lacking, because it did not target its behavior toward the economy or the population of Rhode Island. ECF No. 15 at 2. It notes that it does not purchase or hold promissory notes or real property only in Rhode Island nor did it market the sale of the Mortgage Loan to purchasers in Rhode Island. *Id.* Instead, Isanthes highlights that GRE solicited the purchase of the Mortgage Loan from Isanthes at Isanthes' office in Seattle. *Id.* at 3.

While these contentions may be true, the Court is unconvinced that Isanthes did not purposefully availed itself of the privilege of conducting activities within

Rhode Island. Without the benefits and protections of Rhode Island law, Isanthes could not have made the warranties that GRE alleges it has violated, which "involved the existence or non-existence of restrictions on the use and value" of property in Rhode Island. *See U.S. Bank Nat'l Ass'n v. Bank of Am.*, 916 F.3d 143, 152 (2d Cir. 2019). And without the benefits and protections of Rhode Island law, Isanthes would not have attempted to cure its alleged breach by filing the Rescission with the City of Providence Land Records. The Court thus finds that this activity represents the type of purposeful availment of the privilege of conducting business that makes it reasonably foreseeable that Isanthes could be "haled into court" in Rhode Island. *See Burger King*, 471 U.S. at 475.

    c. Gestalt Factors

To satisfy the reasonableness requirement of specific personal jurisdiction, the Court must consider whether, based on the five gestalt factors, it is reasonable to exercise jurisdiction over Isanthes. *United Elec.*, 960 F.2d at 1089. The gestalt factors include: (1) the defendant's burden in appearing in Rhode Island; (2) Rhode Island's interest in adjudicating the dispute; (3) GRE's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *See Ticketmaster-N.Y.*, 26 F.3d at 209 (citing *Burger King*, 471 U.S. at 477).

Although GRE has the burden of showing relatedness and purposeful availment, Isanthes has the burden of showing that jurisdiction is unreasonable.

*Ticketmaster-N.Y.*, 26 F.3d at 206. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale." *Id.* at 210. "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Id.*

Isanthes claims that, under each gestalt factor, it would be unreasonable to exercise jurisdiction in Rhode Island. ECF No. 15 at 3. First, Isanthes claims that appearing in Rhode Island would be a burden because it is a Delaware limited liability company with its principal place of business in Seattle and does not operate or do business in Rhode Island. *Id.* Second, it claims that Rhode Island has no interest in adjudicating this dispute because it is a breach of contract case between two private parties. *Id.* For the third and fourth gestalt factors, it claims that GRE can obtain relief and this case can be effectively resolved in a court where jurisdiction over Isanthes would not be in question, such as in Delaware or Illinois. *Id.* And for the fifth gestalt factor, Isanthes claims that there is no substantive social policy at issue because it is a breach of contract case between private parties. *Id.*

The Court disagrees and finds that it would be reasonable to exercise personal jurisdiction on Isanthes in Rhode Island. First, the Court is unconvinced that it would be burdensome on Isanthes to defend itself in Rhode Island. As the First Circuit has noted, this factor is not for dealing "with relative convenience." *Baskin-Robbins*, 825 F.3d at 40. Instead, "'this factor is only meaningful where a party can

demonstrate some kind of special or unusual burden.'" *Id.* (quoting *Hannon v. Beard*, 524 F.3d 275, 285 (1st Cir. 2008)). When "parties of substantial means are involved, cross-country travel ordinarily does not qualify as a special or unusual burden." *Id.* Isanthes' burden of appearing in Rhode Island therefore weighs only slightly in its favor.

The second factor—Rhode Island's interest in adjudicating this dispute—favors GRE. The Court rejects Isanthes assertion that Rhode Island has no interest in adjudicating this dispute because it is a breach of contract case between two private parties. The adjudication of Isanthes' allege breaches will consider questions of Rhode Island property law, which this state has an interest in seeing adjudicated properly. That the governing law of the Agreement is Delaware and Illinois law does not change this analysis because a forum state's interest in adjudicating the dispute is independent of the substantive law that governs the dispute. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 70 n.6 (1st Cir. 2014).

The third gestalt factor implicates the plaintiff's convenience. "Courts regularly cede some deference to the plaintiff's choice of forum." *Baskin-Robbins*, 825 F.3d at 41 (citing *Sawtelle*, 70 F.3d at 1395). Although GRE may be able to have this case adjudicated in another jurisdiction, it chose Rhode Island. This factor thus favors GRE.

The fourth gestalt factor, the interest of the judicial system in the effective administration of justice, is neutral. This factor "is self-evidently a wash" because

13

although Rhode Island courts "can effectively administer justice in this dispute, they have no corner on the market." *Baskin-Robbins*, 825 F.3d at 41.

Finally, with respect to the fifth gestalt factor, the interests of the affected sovereigns in promoting substantive social policies, Rhode Island has a legitimate interest because Rhode Island law will be considered in determining whether Isanthes' breached the Agreement.

In their entirety, the gestalt factors favor jurisdiction in Rhode Island and Isanthes has not met its burden in showing that the exercise of such jurisdiction would raise constitutional concerns. The Court thus finds no reason why obliging Isanthes to litigate this claim in Rhode Island would offend traditional notions of fair play or substantial justice or be unreasonable. *See U.S. Bank Nat'l Ass'n*, 916 F.3d at 152. Isanthes' motion to dismiss for lack of personal jurisdiction is thus DENIED.

### B. Failure to State A Claim

Isanthes also moves to dismiss GRE's claims of breach of contract and breach of the covenant of good faith and fair dealing under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 9.

In its Complaint, GRE alleges that Isanthes breached their Agreement by (i) breaching a warranty in Section 6 of the Agreement, (ii) failing to cure that breach within the cure period specified in the Agreement, and (iii) failing to repurchase the Mortgage Loan. ECF No. 1 at ¶¶ 37-40. The breach of the covenant of good faith and fair dealing claim stems from these alleged breaches. *Id.* at ¶¶ 43-45.

14

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts*, 627 F.3d 34, 39 (1st Cir. 2010) (citing *Petrarca v. Fid. & Cas. Ins.*, 884 A.2d 406, 410 (R.I. 2005)).

At this stage of the litigation, taking the allegations as true and in the light most favorable to GRE, including all reasonable inferences, the Court finds that GRE has plausibly alleged a breach of contract claim. First, the parties agree that an enforceable agreement existed between them. Second, in its Complaint, GRE alleges that Isanthes breached the warranty in Section 6 of the Agreement that provided it had good title to the Mortgage Loan and the ability to transfer the Mortgage Loan to GRE. ECF No. 1 at ¶¶ 9-10, 19. GRE's discovery of the Prior AOM, which potentially creates a separate chain of title of the Mortgage Loan, questions the accuracy of Isanthes' warranty. Section 6 of the Agreement provided GRE with 120 days from May 29, 2019 to discover and give notice of a breach of representation or warranty. GRE alleges that after discovering the Prior AOM, it brought the alleged breach to Isanthes' attention on September 11, 2019 (within the 120-day period). *Id.* at ¶ 24. According to GRE, that notice, which "specifically cit[ed] the warranties" that Isanthes allegedly breached, triggered a sixty-day cure period, when Isanthes was required under the Agreement to cure the breach. *Id.* at ¶¶ 24, 31. GRE alleges that Isanthes failed to cure the breach and instead filed the "ineffective" Rescission that "did not as a matter of law correct or remedy" the title issue. *Id.* at ¶ 26. After the

cure period expired, Isanthes was required under the Agreement to repurchase the Mortgage Loan at GRE's request. GRE alleges that it requested repurchase and Isanthes failed to comply within forty-five days of the expiration of the cure period, further breaching the Agreement and causing GRE to sustain damages. *Id.* at ¶¶ 29, 31, 33. GRE's alleged damages are the repurchase price of the Mortgage Loan of $107,000, attorneys' fees, and reasonable costs. *Id.* at ¶¶ 39-40, 43-45.

Isanthes argues that this claim fails because GRE did not review the chain of assignments of the Mortgage Loan before consummating its Agreement with Isanthes and did not request certain documents from Isanthes in accordance with the provisions of Section 5 of the Agreement, which required Isanthes to deliver mortgage related documents after the closing listed in the Document Exception Report. ECF No. 9-1 at 7-9. Isanthes' attempt to preclude GRE's claim of a breach of Section 6 of the Agreement as impermissible because of the provisions of Section 5 is unconvincing. Section 6.2 of the Agreement provides that a breach of Section 6.1 may be discovered within 120 days following the Conveyance Date and sets forth the notice, cure, and request for repurchase provisions that GRE alleges to have complied with in its Complaint. Section 5.2(ii) required GRE to make its request of Exception Documents prior to the Conveyance date and Isanthes to make a good faith effort to deliver all documents listed on the Document Exception Report within ninety days of the Conveyance Date. If the provisions of Section 5.2 regarding the Document Exception Report preclude all breach claims of Section 6.1, the breach provisions of Section 6.2 would appear to be without meaning.

16

Isanthes also contends that GRE has failed to adequately plead damages because, according to Isanthes, GRE holds the Mortgage Loan and did not allege that it tried to enforce the Mortgage Loan without success. ECF No. 9-1 at 10-11. While GRE has not alleged that it tried to enforce the Mortgage Loan without success, it has alleged, and adequately pleaded, that it demanded repurchase under the Agreement and that Isanthes refused to repurchase the Mortgage Loan. GRE also requested reasonable costs associated with Isanthes alleged breach of the Agreement in accordance with Section 7.2 of the Agreement.[1] ECF No. 1 at ¶¶ 39-40, 43-45.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion to Dismiss. ECF No. 9.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 21, 2020

---

[1] Isanthes also challenged the Court's subject matter jurisdiction to hear this case claiming the amount in controversy is less than the $75,000 required for diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 15 at 4-6. Considering the repurchase price of the loan, which GRE claims is $107,000, along with its request for reasonable costs resulting from the breach, pursuant to Section 7.2 of the Agreement, the Court finds that GRE made a good faith pleading of damages greater than $75,000. *See Ins. Brokers West v. Liquid Outcome, LLC*, 874 F.3d 294, 297 (1st Cir. 2017).